UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| FRED NEKOUEE, individually, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. 2:19-cv-02737 |
| | : | |
| NEIMAN PLAZA. LLC, | : | |
| a Kansas limited liability company; | : | |
| | : | |
| and | : | |
| | : | |
| FAMILY DOLLAR, INC., a North Carolina | : | |
| corporation; | : | |
| | : | |
| Defendants. | : | |

_____/

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendants, NIEMAN PLAZA. LLC, a Kansas limited liability company; and FAMILY DOLLAR, INC.,  a North Carolina limited liability company (sometimes referred to as "Defendants"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant NIEMAN PLAZA. LLC owns the Nieman Plaza at and near 6220 Nieman Road, Shawnee, Kansas 66203, in Johnson County ("Nieman Plaza").

3.       Defendant FAMILY DOLLAR, INC.'s store is located in the Nieman Plaza

("Family Dollar").

4.     Pet Stop is located in the Nieman Plaza.

5.     Sarpino's Pizzeria is located in the Nieman Plaza.

6.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the Nieman Plaza.   The Defendants' Nieman Plaza, Family Dollar, Pet Stop, and Sarpino's Pizzeria are located in and do business within this judicial district.

7.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

8.     Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

9.     The Nieman Plaza is a shopping center.

10.     The Nieman Plaza is a place of public accommodation.

11.     Family Dollar is a place of public accommodation.

12.     Pet Stop is a place of public accommodation.

13.     Sarpino's Pizzeria is an establishment serving food and drink.   42 U.S.C. § 12181(7)(B).

14.     Sarpino's Pizzeria is a place of public accommodation.

15.     Defendants are each responsible for complying with the obligations of the ADA.

16.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

17.     Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

18.     Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Nieman Plaza which forms the basis of this lawsuit on July 14, 2018; February 2, 2019; and May 12, 2019, and he observed the Nieman Plaza again on September 14, 2019, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to the heavy equipment auction and dealerships, and to his uncle and cousin he visits in the Kansas City area.

19.     He visited the Kansas City area in March 2018, July 2018, February 2019, May 2019 and September 2019 and he has plans to return to the Kansas City area in December 2019 or February or March 2020.

20.      Fred Nekouee visited and bought goods at Family Dollar on July 14, 2018; February 2, 2019, and May 12, 2019.

21.      Fred Nekouee visited and bought goods at Pet Stop on July 14, 2018 and on February 2, 2019.

22.      Fred Nekouee visited and bought food at Sarpino's Pizzeria on July 14, 2018 and on May 12, 2019.

23.      Fred Nekouee plans to return to the Nieman Plaza to avail himself of the goods and services offered to the public at the Nieman Plaza, Family Dollar, Pet Stop, and Sarpino's Pizzeria.

24.      The Plaintiff has definite plans to return to the area and to the Nieman Plaza,

3

Family Dollar, Pet Stop, and Sarpino's Pizzeria in December 2019 or February or March 2020.

25.    The Nieman Plaza, Family Dollar, Pet Stop, and Sarpino's Pizzeria are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

26.    The Plaintiff likes the broad range of inexpensive household items for sale at Family Dollar in the Nieman Plaza.

27.    The Plaintiff plans to return to Family Dollar to shop.

28.    The Plaintiff likes the goods at Pet Stop.

29.    The Plaintiff plans to return to Pet Stop to buy items for pets.

30.    The Plaintiff likes the food at Sarpino's Pizzeria.

31.    The Plaintiff plans to return to Sarpino's Pizzeria to eat.

32.    For the reasons set forth in paragraphs 17-31 and 45, Fred Nekouee plans to return to the Nieman Plaza.

33.    The Plaintiff has encountered architectural barriers at the Nieman Plaza.

34.    The barriers to access that the Plaintiff encountered at the Nieman Plaza have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the Nieman Plaza, and have impaired his use of the restrooms there.

35.    The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

36.    The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

37.    Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

38.    On his visit to Nieman Plaza, the Plaintiff encountered excessively steep slopes in its parking lot.

39.    The cross slopes of the access aisles serving the parking spaces for disabled patrons in front of Family Dollar are steeper than 1:48 and also steeper than 3.1%.

40.    The cross slope of the walking surface in front of Family Dollar on the accessible route to the entrance of Family Dollar is steeper than 1:48 and also steeper than 3.1%.

41.    The Plaintiff encountered and observed barriers to access in the restroom in Pet Stop.

42.    The Plaintiff encountered and observed barriers to access in the restroom in Sarpino's Pizzeria.

43.    The Plaintiff is deterred from visiting the Nieman Plaza even though he enjoys its goods, because of the difficulties he will experience there until the Nieman Plaza is made accessible to him in a wheelchair.

44.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the Nieman Plaza as described but not necessarily limited to the allegations in paragraph 50 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

45.    Fred Nekouee desires to visit the Nieman Plaza not only to avail himself of the goods and services available at the Nieman Plaza but to assure himself that the Nieman Plaza is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the Nieman Plaza without fear of discrimination.

46.    The Defendants have discriminated against the individual by denying him access

to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

47.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

48.     Physical conditions that exist at the Nieman Plaza are accurately described in each romanette "(i)" in each lettered subparagraph of paragraph 50 below

49.     Preliminary inspections of the Nieman Plaza show that violations of the ADA exist as set forth in paragraph 50 below.

50.     The violations of the ADA that Fred Nekouee personally encountered or observed at the Nieman Plaza include, but are not limited to:

**PARKING**

a.   (i) In the parking lot, one of the parking spaces for disabled patrons in front of PPG Paints does not have upright signage with the International Symbol of Accessibility.   (ii) For this parking space, there are no upright signs with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iii) The Plaintiff observed this lack of upright signage, and it deters him from visiting the Nieman Plaza.   (iv) The action required to install upright signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot, one of the parking spaces for disabled patrons in front of Vape does not have upright signage with the International Symbol of Accessibility.   (ii)

For this parking space, there are no upright signs with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iii) The Plaintiff observed this lack of upright signage, and it deters him from visiting the Nieman Plaza.   (iv) The action required to install upright signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

    c.   (i) In the parking lot in front of Vape, the section of the parking space for disabled patrons furthest from the building has a running slope steeper than 1:48 and steeper than 3.1%.   (ii) This section of the parking space for disabled patrons has a running slope steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff observed the slope of this parking space for disabled patrons, and it deters him from visiting the Nieman Plaza.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

    d.   (i) In the parking lot in front of Family Dollar, the section of the parking space for disabled patrons furthest from the building and to the right of the access aisle (oriented as one faces the building) has a running slope steeper than 1:48 and steeper than 3.1%.   (ii) This section of the parking space for disabled patrons has a running slope steeper than 1:48 and steeper than 3.1%.In the parking lot, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the slope of this parking space for disabled patrons, it made his wheelchair unstable, and it deters him from visiting the Nieman Plaza and Family Dollar.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i) In the parking lot in front of Family Dollar, the section of the parking space for disabled patrons furthest from the building and to the left of the access aisle (oriented as one faces the building) has a running slope steeper than 1:48 and steeper than 3.1%.   (ii) This section of the parking space for disabled patrons has a running slope steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the slope of this parking space for disabled patrons, it made his wheelchair unstable, and it deters him from visiting the Nieman Plaza and Family Dollar. (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

f.   (i) In the parking lot in front of Family Dollar, the front section (closer to the building) of the parking space for disabled patrons with van access signage has a cross slope steeper than 1:48 and steeper than 3.1%.   (ii) This section of the parking space for disabled patrons has a cross slope steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the slope of this parking space for disabled patrons, it made his wheelchair unstable, and it deters him from visiting the Nieman Plaza and Family Dollar.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

g.   (i) In the parking lot in front of PPG Paints, the front section (closer to the building) of the parking space for disabled patrons has a running slope steeper than 1:48 and steeper than 3.1%.   (ii) This section of the parking space for disabled patrons has a running slope steeper than 1:48 and as steep as about 5%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the slope of this parking space for disabled patrons,

it made his wheelchair unstable, and it deters him from visiting the Nieman Plaza.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) In the parking lot in front of PPG Paints, the front section (closer to the building) of the access aisle serving the parking spaces for disabled patrons has a running slope steeper than 1:48 and steeper than 3.1%.   (ii) This section of the access aisle has a running slope steeper than 1:48 and as steep as about 4%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the slope of this access aisle for disabled patrons, it made his wheelchair unstable, and it deters him from visiting the Nieman Plaza. (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) In the parking lot in front of Family Dollar, the front section (closer to the building) of the access aisle serving the parking spaces for disabled patrons has a running slope steeper than 1:48 and steeper than 3.1%.   (ii) This section of the access aisle has a running slope steeper than 1:48 and steeper than 10%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the slope of this access aisle for disabled patrons, it made his wheelchair unstable, and it deters him from visiting the Nieman Plaza and Family Dollar.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) In the parking lot in front of Family Dollar, the middle section of the access aisle serving the parking spaces for disabled patrons has a running slope steeper than 1:48 and steeper than 3.1%.   (ii) This section of the access aisle has a running slope steeper than 1:48 and as steep as about 5%, in violation of Federal Law 2010, ADAAG § 502.4.

(iii) The Plaintiff encountered the slope of this access aisle for disabled patrons, it made his wheelchair unstable, and it deters him from visiting the Nieman Plaza and Family Dollar.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

k.    (i) The cross slope of the walking surface in front of Family Dollar is steeper than 1:48 and is steeper than 3.1%.   (ii) The cross slope of this walking surface is steeper than 1:48 and is steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered the cross slope of this walking surface in front of Family Dollar, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface along the accessible route to Family Dollar is easily accomplishable and able to be carried out without much difficulty or expense.

l.    (i) The running slope of the access ramp in front of PPG Paints is steeper than 1:12 and steeper than 9%.   (ii) The running slope of the access ramp in front of PPG Paints is steeper than 1:12 and is as steep as about 12%, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) The Plaintiff encountered this steep running slope of this access ramp while moving in his wheelchair, and he required assistance to ascend and to descend this ramp. (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

m.    (i) The slope of the curb ramp sides of the access ramp in front of PPG Paints is steeper than 1:10 and steeper than 11%.   (ii) The slope of the curb ramp sides of the access ramp in front of PPG Paints is steeper than the maximum allowed slope of 1:10 (10%) and steeper than 20%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) Due to the slope of these curb ramp sides, the Plaintiff's wheelchair became unstable and he had to

maneuver with assistance to avoid them.   (iv) The action required to reduce the slope of these curb ramp sides is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) In the parking lot in front of Vape, the access ramp extends into the parking space for disabled patrons to the right of the access aisle (oriented as one faces the building) and into the access aisle.   (ii) This access ramp extends into this parking space for disabled patrons to the right of the access aisle (oriented as one faces the building) and into the access aisle, in violation of Federal Law 2010, ADAAG §§ 406.3, 406.5 and 502.4.   (iii) The Plaintiff encountered this access ramp, access aisle and parking space, and due to the extension of the access ramp into the access aisle and parking space, it made it dangerous for the Plaintiff to use the access aisle and he had to avoid the steep slope of the access ramp that extended into the parking space for disabled patrons.   (iv) The action required to remove this access ramp and to replace it with a proper access ramp that does not extend into the access aisle and parking space for disable patrons is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) In the parking lot in front of ENS Chiropractic, the access or curb ramp projects into the access aisle.   (ii) As shown in the photograph below, this curb ramp projects into the access aisle along the accessible route from the parking spaces for disabled patrons to Sarpino's Pizzeria, in violation of Federal Law 2010, ADAAG §§406.5 and 502.4.   (iii) While moving in his wheelchair to visit Sarpino's Pizzeria, the Plaintiff encountered this curb ramp which placed him in danger since it extends into the access aisle in the parking lot.   (iv) The action required to remove this curb ramp and to replace it with a proper curb ramp that does not extend into the access aisle is easily accomplishable

and able to be carried out without much difficulty or expense.



p.    (i) In the parking lot in front of PPG Paints, the access or curb ramp projects into the access aisle.   (ii) This curb ramp projects into the access aisle, in violation of Federal Law 2010, ADAAG §§ 406.5 and 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this curb ramp along the accessible route to Family Dollar, which curb ramp placed him in danger since it extends into the access aisle in the parking lot. (iv) The action required to remove this curb ramp and to replace it with a proper curb ramp that does not extend into the access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

**FAMILY DOLLAR ENTRANCE DOOR**

q.    (i) The length of time for the entrance door to Family Dollar to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The length

of time for the entrance door to Family Dollar to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time for this entrance door to Family Dollar to close, this door closed on his wheelchair before the Plaintiff could not make it through the door.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

r.    (i) The force needed to open the entrance door to Family Dollar is greater than 5 pounds.   (ii) The force needed to open the entrance door to Family Dollar is about 9 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance in his wheelchair to open this door to enter Family Dollar. (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN PET STOP**

s.    (i) The force needed to open the entrance door to the Pet Stop restroom is greater than 5 pounds.   (ii) The force needed to open the entrance door to the Pet Stop restroom is about 9 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance in his wheelchair to open this door to enter Pet Stop.   (iv) The action required to reduce the force necessary to fully open this door is

easily accomplishable and able to be carried out without much difficulty or expense.

t.     (i) In the restroom in Pet Stop, a door pull is not provided on both sides of the door to the toilet compartment near the latch.   (ii) A door pull is not provided on both sides of this door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on the door to the accessible toilet compartment, the Plaintiff could not fully close the door when he used the toilet.   (iv) The action required to install door pulls on both sides of the door to the accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

u.     (i) In the restroom in Pet Stop, the operation of the latch on the accessible toilet compartment door requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this latch on this accessible toilet compartment door requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff could not operate this door latch with a closed fist or loose grip. (iv) The action required to replace this latch (door hardware) is easily accomplishable and able to be carried out without much difficulty or expense.

v.     (i) In the restroom in Pet Stop, the width of the accessible toilet compartment is less than 60 inches.   (ii) The width of this accessible toilet compartment is less than 60 inches and is only bout 35 inches wide, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the lack of width in this toilet compartment, the Plaintiff could not turn his wheelchair around in this compartment.   (iv) The action required to increase the width of this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

w.     (i) In the restroom in Pet Stop, the height of the top surface of the toilet seat above

the floor is less than 17 inches.   (ii) The height of the top surface of this toilet seat above the finish floor is less than 17 inches and is only about 15 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 604.4.   (iii) Due to the height of the top surface of this toilet seat above the floor, the Plaintiff had added difficulty transferring himself from his wheelchair to the toilet seat and back again.   (iv) The action required to install a booster seat or to replace this toilet with an ADA compliant toilet is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) The accessible toilet compartment in Pet Stop does not have any grab bars. (ii) As shown in the photograph below, the Pet Stop does not have a rear wall grab bar and does not have a side wall grab bar, in violation of Federal Law 2010, ADAAG § 604.5. (iii) Due to the lack of any grab bars in this accessible toilet compartment, the Plaintiff required assistance to transfer himself from his wheelchair to the toilet and back again. (iv) The action required to install grab bars is easily accomplishable and able to be carried out without much difficulty or expense.



y.   (i) In the restroom in Pet Stop, the drain pipe under the sink is not insulated.   (ii) As shown in the photograph below, the water drain pipes under the sink in this restroom are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) Due to the lack of insulation of this drain pipe under the sink in this restroom, the Plaintiff risked skin burns and injury to his legs when he used the sink.   (iv) The action required to fully insulate the drain pipe under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



z.      (i) In the restroom in Pet Stop, the operation of the faucet controls to the sink require tight grasping, pinching or twisting of the wrist.   (ii) The operation of the faucet controls to this sink require tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4.   (iii) The Plaintiff tried but could not operate the faucet controls with a closed fist or loose grip, and he required assistance to turn the water on and off to wash his hands.   (iv) The action required to replace these faucet controls is easily accomplishable and able to be carried out without much difficulty or expense.

aa.      (i) In the restroom in Pet Stop, the paper towel dispenser is higher than 48 inches above the floor.   (ii) This paper towel dispenser is higher than 48 inches above the finish floor and is about 64 inches above the finish floor and outside of the reach range of an

individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to its height above the floor, from his wheelchair, the Plaintiff could not obtain a paper towel on his own.   (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In the restroom in Pet Stop, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and as high as about 44 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the finish floor, the Plaintiff could not see his full face in this mirror while sitting in his wheelchair.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the restroom in Pet Stop, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is about 63 inches above the finish floor, and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from visiting Pet Stop and the Nieman Plaza.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**SARPINO'S PIZZERIA**

dd.   (i) The force needed to open the entrance door to Sarpino's Pizzeria is greater than 5 pounds.   (ii) The force needed to open the entrance door to Sarpino's Pizzeria is about 12 pounds and more than the maximum allowed force of 5 pounds (22.2 N),

pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance in his wheelchair to open this door to enter Sarpino's Pizzeria.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

ee.    (i) The length of time for the entrance door to Sarpino's Pizzeria to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The length of time for the entrance door to Sarpino's Pizzeria to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time for this entrance door to Sarpino's Pizzeria to close, this door closed on his wheelchair before the Plaintiff could not make it through the door.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

ff.    (i) In Sarpino's Pizzeria, the restroom does not have signage with the International Symbol of Accessibility.   (ii) As shown in the photograph below, this restroom does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the International Symbol of Accessibility, and it deters him from eating at Sarpino's Pizzeria and from visiting the Nieman Plaza.   (iv) The action required to install signage at the entrance to this restroom with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



gg.    (i) In the restroom in Sarpino's Pizzeria, the paper towel dispenser is higher than

48 inches above the floor.   (ii) This paper towel dispenser is higher than 48 inches above

the finish floor and is about 57 inches above the finish floor and outside of the reach range

of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.

(iii) Due to its height above the floor, from his wheelchair, the Plaintiff could not obtain a

paper towel on his own.   (iv) The action required to relocate this paper towel dispenser is

easily accomplishable and able to be carried out without much difficulty or expense.

51.    All of the foregoing violations are also violations of the 1991 Americans with

Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design,

as promulgated by the U.S. Department of Justice.

52.     The discriminatory violations described in paragraph 50 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

53.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

54.     Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

55.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

56.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is

warranted.

57.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

58.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

59.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

60.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Nieman Plaza and Family Dollar, the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that the Defendants at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby

designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____ _____
Robert J. Vincze (KS #14101)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*